## HADDOCK & GREYHOUND BREEDERS ASSOCIATION OF FLORIDA, INC. v FLORIDA GAME AND FRESHWATER FISH COMMISSION

### Case No. 86-3341R

State of Florida, Division of Administrative Hearings

May 19, 1987

#### APPEARANCES OF COUNSEL

**Michael D. LaBarbera, LaBarbera & Campbell,** for petitioner.

**Dan R. Stengle,** General Counsel, Florida Game and Freshwater Fish Commission, for respondent.

#### OPINION

P. MICHAEL RUFF, Hearing Officer.

### *FINAL ORDER*

Pursuant to notice, this cause came on for administrative hearing

before P. Michael Ruff on January 13, 1987. At the hearing the parties requested that the record be held open until February 16, 1987, during which time, instead of putting on evidence at the hearing, they would enter into a factual stipulation as well as filing written legal arguments for their respective positions. This request was granted.

This matter concerns whether the Game and Fresh Water Fish Commission has acted within its proper constitutional and statutory authority in proposing Rule 39-12.011, as amended, which prohibits any person importing or possessing a live hare or jack rabbit except as authorized by permit issued in accordance with Rule 39-9.002, *Florida Administrative Code.* The rule arose out of the fact that on October 1, 1986, Section 86-179, *Laws of Florida,* took effect, designed to amend Section 828.122, *Florida Statutes,* concerning "animal baiting." This enactment prohibited the use of live animals in the training of racing greyhounds. On August 18, 1986, the Commission published its proposed Rule 39-12.011 designed to "supplement legislative prohibitions enacted in 86-179, *Laws of Florida.*" That proposed rule read as follows:

"39-12.011 Importation of undesirable mammals. No person shall import or possess any live hare or jack rabbit (lepus sp.) to train racing greyhounds. The Executive Director may issue permits authorizing the importation, possession or use of such live hares or jack rabbits for scientific or educational purposes."

Notice of the proposed rule was published in the *Florida Administrative Weekly* as required by Section 120.54(1)(b), *Florida Statutes* (1985). Thereafter, the Commission published notice in a subsequent *Florida Administrative Weekly* of changes to the proposed rule, as required by Section 120.54(13)(b), *Florida Statutes* (1985). The rule as proposed now reads as follows:

"39-12.011 Importation of undesirable mammals. No person shall import or possess any live hare or jack rabbit (lepus sp.), except as authorized by permit issued in accordance with Rule 39-9.002, *Florida Administrative Code.*"

The issue to be resolved thus concerns whether that proposed rule, as amended, is a valid and proper exercise of the Commission's rule-making authority. The final hearing was scheduled for January 13, 1987, after being continued once by agreement of the parties. The parties thereby waived the 30 day requirement for the convening of the hearing. On the day of the hearing the parties stipulated that the cause could be submitted to the Hearing Officer for decision based upon Stipulation of Facts and Memoranda of Law submitted by each party

on or before February 16, 1987, thereby waiving the time constraints for rendition of the Final Order herein.

## FINDINGS OF FACT

*Stipulation*

The parties have stipulated to the following:

1. There was no necessity for taking of live testimony on the scheduled hearing date of January 13, 1987.

2. The Petitioners are substantially affected by the pending rule and are proper parties to this proceeding.

3. The Division of Administrative Hearings has no jurisdiction to determine either Florida or federal constitutional questions which may be pending in this matter. The constitutionality of the proposed or pending rule is a matter that may be raised in Court for the first time should either party appeal the decision made herein or institute a separate proceeding concerning the constitutionality of the proposed rule.

4. The Commission currently issues permits to out-of-State individuals or businesses for the purpose of bringing jack rabbits or hares into the State. According to the records and best estimates of the Commission, there are five importers who import into the State approximately 50,000 jack rabbits or hares per year. These, in turn, are delivered to approximately 5,000 greyhound trainers, breeders and ranches. None are released into the wild. Prior to the passage of 86-179, *Laws of Florida,* which provides that it is an unlawful cruelty to animals, called "baiting", to train racing greyhounds with live animals, the majority of racing greyhounds were trained with live jack rabbits. This involves the chasing of the jack rabbit by the greyhound, which usually catches it and kills it.

5. The Commission passed the rule described herein, but continues to issue importation permits pending a determination of the validity of the rule. If determined valid, issuance will cease.

6. The Commission possesses, and there shall be entered into evidence, its biologist's report on jack rabbits in the State of Florida. Each party may fairly comment on the report.

7. The Petitioners and all those similarly situated will suffer substantial economic impact if they are unable to utilize jack rabbits in the training of racing greyhounds. This is true whether the jack rabbit is living or dead at the time of training. It is the Commission's position that this impact is as a result of the enactment of 86-179, *Laws of Florida,* and not its rule. (End of Stipulation.)

240

8. Effective October 1, 1986, *Florida Statutes* 828.122 was amended by 86-179, *Laws of Florida.* That amendment changed the definitions of "animal" and "baiting" to prohibit the use of live animals in the training of racing greyhounds. On August 18, 1986, the Commission published its proposed Rule 39-12.011 to "supplement legislative prohibitions enacted in 86-179, *Laws of Florida.*" The proposed rule read as follows:

"39-12.011 Importation of undesirable mammals. No person shall import or possess any live hare or jack rabbit (lepus sp.) to train racing greyhounds. The Executive Director may issue permits authorizing the importation, possession or use of such live hares or jack rabbits for scientific or educational purposes."

9. After publication of the proposed rule and the filing of the subject petition, the Commission promulgated an amended version of the rule, duly noticed, which is now pending. That proposed rule reads as follows:

"39-12.011 Importation of undesirable mammals. No person shall import or possess any live hare or jack rabbit (lepus sp.), except as authorized by permit issued in accordance with Rule 39-9.002, *Florida Administrative Code.*"

10. The proposed rules challenged in this proceeding were, as indicated by the publication in the *Florida Administrative Weekly,* proposed under specific authority of Article IV, Section 9 of the Florida Constitution, Sections 372.265 and 372.021, *Florida Statutes.* Thus, the Commission is apparently, at the outset at least, proposing the rule under both its constitutional authority as well as the supposed legislative authority to enact the subject rule. The constitutional provision cited above, as well as Section 372.265, *Florida Statutes,* and Chapter 86-179, *Laws of Florida,* is cited in the Notice of the Proposed Rule Enactment as being the "law implemented" by the proposed rule. The Commission has thus elected to promulgate rules in accordance with the procedures contained in Chapter 120, *Florida Statutes,* the Administrative Procedure Act.

11. The jack rabbit, and more specifically the black-tailed jack rabbit, imported into Florida for the purposes of greyhound training in the past, is a species of wild animal life indigenous to arid or semi-arid areas lying west of the Mississippi River. It has historically been imported into Florida for the above-mentioned purpose and small small numbers have escaped captivity and there is a population of an unknown size existing in the wild in the south-central or southern

241

portion of the State. There is no question that the jack rabbit, the subject of the proposed rule, is a species of "wild animal life."

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction over the subject matter of and the parties to this proceeding. Section 120.54(4), *Florida Statues.*

Proposed Rule 39-12.011, as presently constituted, provides as follows:

"39-12.011 Importation of undesirable mammals. No person shall import or possess any live hare or jack rabbit (lepus sp.), except as authorized by permit issued in accordance with Rule 39-9.002, *Florida Administrative Code.*"

The Respondent has listed as "specific authority" for adoption of the aforesaid rule, Article IV, Section 9 of the Florida Constitution and Section 372.021, *Florida Statutes,* as well as Section 372.265, *Florida Statutes.* Section 372.265 merely makes it unlawful to import for sale or use or to release within the State any non-indigenous animal species without having obtained a permit from the Respondent to do so and authorizes the Commission to either issue or deny such a permit upon the completion of a study of the species and its ecological impact on the State, as well as providing a penalty for a violation. That Section in itself contains no rule-making authority and accordingly Section 372.021 and Article IV, Section 9 of the Florida Constitution must be looked to to analyze the source of the Commission's rule-making authority here and consequently the jurisdiction of the Division of Administrative Hearings and the undersigned Hearing Officer to make a ruling upon the issue of the rule's validity. Parenthetically in this regard, it should be noted that if the challenged proposed rule is indeed of constitutional origin, then the Division and the Hearing Officer is without jurisdiction to determine the question of its validity. Certainly, however, the Division and the Hearing Officer have jurisdiction to initially consider the question of its own jurisdiction, which must first be analyzed here. If that were not the case, then any agency could claim constitutional as opposed to legislative authority for its actions and immunize itself from the requirements and procedures of the Administrative Procedure Act. It is concluded then that the Division of Administrative Hearings and the undersigned Hearing Officer has jurisdiction to initially examine an agency's claim of authority to adopt rules. If that analysis spawns the conclusion that an agency's rule-making emanates solely from a constitutional grant of authority, and thus that a determination of the rule's validity would involve constitu-

242

tional interpretations, then jurisdiction under the Administrative Procedure Act lapses and the issues became justiciable only by a Court. See *Wilma Sullivan and John Sullivan v. The Florida Commission on Ethics,* Case No. 83-2786R, Final Order filed May 22, 1985.

Aside from Section 372.265 discussed above, the Commission has listed as specific authority for adoption of the proposed rule, Article IV, Section 9 of the Florida Constitution and Section 372.021, *Florida Statutes.* Article IV, Section 9 of the Florida Constitution provides as follows:

"There shall be a Game and Fresh Water Fish Commission composed of five members appointed by the Governor subject to confirmation by the Senate for staggered terms of five years. *The Commission shall exercise the regulatory and executive powers of the State with respect to wild animal life and fresh water aquatic life except that all license fees for taking wild animal life and fresh water aquatic life and penalties for violating regulations of the Commission shall be prescribed by specific statute. The Legislative may enact laws in aid of the Commission, not inconsistent with this Section.* The Commission's executive powers in the area of planning, budgeting, personnel management and purchasing shall be as provided by law. Revenue derived from such license feels shall be appropriated to the Commission by the Legislature for the purpose of management, protection and conservation of wild animal life and fresh water aquatic life." (Emphasis added.)

Section 372.021, *Florida Statutes,* provides:

"The Game and Fresh Water Fish Commission *may* exercise the powers, duties and authority granted by Section 9, Article IV of the Constitution of Florida, *by the adoption of rules, regulations and orders in accordance with Chapter 120.*" (Emphasis added.)

The Commission lists as the "law implemented" Section 372.265, *Florida Statutes,* and 86-179, *Laws of Florida.* As mentioned above, Section 372.265 concerns the necessity for a permit for importation of animal species not indigenous to Florida and the necessity for an ecological effect study before such permits may be authorized. Thus, although that Section relates to the permitting of imported non-indigenous species of which jack rabbits are one, that Section does not specifically give the Commission any rule-making authority. Section 372.021, quoted above, does. The other statutory provision listed as the law implemented in the notice accompanying the proposed rule, 86-179, *Laws of Florida,* simply outlaws the practice of training racing greyhounds with the use of live jack rabbits. That provision is silent on any authority in the Commission to make rules to implement it.

243

Concerning the proposed rule here under challenge, Petitioner argues that the Respondent seeks to adopt a rule which is ultra vires of any legislative grant of authority. The Petitioner contends that the passage of the proposed rule prohibiting possession of or importation of live jack rabbits has no relationship to the management of wild life resources within the State, which is the purpose of the Commission's constitutional charge. The Petitioners maintain that the rule concerning importation and possession of live jack rabbits has nothing to do with wild life management, but rather is an attempt to make a rule to supplement Chapter 86-179, *Laws of Florida,* and which goes beyond the intent of that statute, cited by the Commission as the "law implemented." The Petitioners thus argue that the stated purpose of the rule being to supplement 86-179, that the rule has no other purpose which has anything to do with regulation of wild animal life; that the Legislature did not authorize the Commission to promulgate a rule to supplement its law and that thus the Commission clearly exceeded its delegated rule-making authority since it has no rule-making authority outside of the subject matter of wildlife management. Petitioner also contends that the Economic Impact Statement is fatally flawed because a profound economic detriment will be imposed on greyhound breeders and trainers, as well as owners, if they are unable to use either live or recently deceased jack rabbits to train their dogs. The Commission contends that the economic impact will be minimal.

Firstly, as found above, the black-tailed jack rabbit is clearly a species of wild animal life, albeit not indigenous to Florida. Thus the rule clearly relates to a subject matter over which the Commission has rule-making authority in its constitutional charge quoted above. Now, Section 120.54(4)(a), *Florida Statutes,* provides a mechanism whereby a citizen "substantially affected" by an agency rule may seek a determination of the validity of that proposed rule may seek a determination of the validity of that proposed rule on the ground that it is an *invalid exercise of delegated legislative authority.*" (Emphasis added.) In order for a proposed rule to be declared invalid in a Section 120.54 proceeding, the rule must be by definition grounded in a legislative grant of authority. Here the agency has conceded itself, in countering Petitioner's argument that the promulgated rule constitutes an invalid exercise of delegated legislative authority, that the rule is validly proposed because it is promulgated in the exercise of the Commission's constitutional authority and functions and does not contradict an action of the Legislature in the area where the Legislature has a legitimate interest. The above constitutional provision dictates that the Commission shall exercise regulatory and executive power of the State with respect to

244

wild animal life and thus the Commission exercises law-making power over wild animal life in Florida.

The Respondent acknowledges that the Constitution contemplates a cooperative effort between the Legislature and the Commission and that several important aspects of the Commission's functions are subject to Legislative will, including the matters of license fees, criminal penalties and budget matters. Although the central power of the Commission over wild animal life is preeminent, the Legislature is constitutionally empowered to enact laws in aid of the Commission that do not derogate its constitutional authority. Thus the various provisions of Chapter 372 were enacted by the Legislature and it is under them, as well as Section 372.921, *Florida Statutes* (1985), that the Commission generally issues permits to importers of jack rabbits to be sold to greyhound breeders and trainers.

In enacting Chapter 86-179, *Laws of Florida,* the Respondent argues that the Legislature was targeting greyhound training with live jack rabbits for abolition. Given its constitutional authority over wild animal life, the Commission is the only agency empowered to authorize the importation of life jack rabbits and according to the Respondent, the Commission concluded that the only enforceable mechanism to carry out the legislative weal directed at prohibiting training with live jack rabbits is to forbid their live importation, a judgment that the Respondent maintains the Commission has the *constitutional prerogative* to make. In view of its Constitutional authority, the Respondent asserts that it acts without the necessity of delegated legislative authority. *Airboat Association of Florida, Inc. et al. v. Florida Game and Fresh Water Fish Commission,* 498 So.2d 629 (Fla. 3d DCA 1986). Therefore, Respondent maintains that it is non-sequitur for Petitioners to argue that the rule should be invalidated as violative of delegated legislative authority since Respondent maintains it was promulgated under constitutional authority. If that be the case then and the agency is indeed exercising a constitutional authority instead of a legislative grant of authority, then clearly the Section 120.54 challenge before the Division of Administrative Hearings and the undersigned Hearing Officer will not lie.

The Commission is practically the sole exception to the legislative pronouncement in Section 120.54(14), *Florida Statutes,* that "no agency has inherent rule-making authority. . . ." The Commission, pursuant to the language of Article IV, Section 9 of the Constitution has been invested with "the regulatory and executive powers of the State with respect to wild animal life and fresh water aquatic life," which provision limits the Legislature to enactment of ". . . laws in aid of the

Commission, not inconsistent with this Section." Thus, rules of the Commission concerning regulation of wild animal life and fresh water aquatic life are grounded on a constitutional rather than a legislative grant of authority. The proposed rule clearly concerns the regulation of wild animal life. The black-tailed jack rabbit is clearly a wild animal species indigenous to the western portions of the United States, the importation of which into this State, the subject rule addresses. Given the constitutional origin of the rule, acknowledged by the Respondent Commission (even though in its notice of "specific authority" for adoption it also relies on Sections 372.021, *Florida Statutes,* and 372.265, Florida Statutes), the rule cannot be subject to attack in a Section 120.54 proceeding.

Legislative recognition of the immunity of Commission rule-making from the standards of Chapter 120, *Florida Statutes,* is implicit in Section 372.021, *Florida Statutes,* wherein that provision makes the adoption of rules by the Commission in accordance with Chapter 120 merely permissive rather than mandatory, as is the case with "administrative" agencies. "The Commission's acceptance of this 'invitation' to adopt its rules in accordance with Chapter 120 and to publish them in the *Florida Administrative Code* did not, nor could it have, constituted a waiver of its constitutional mandate, thereby subjecting [the rule] to administrative, rather than judicial, attack." See *Rick Osborne v. Florida Game and Fresh Water Fish Commission,* 3 FALR 1483-A (DOAH Case No. 81-062R), *affirmed* at 404 So.2d 870 (Fla. 1st DCA 1981).

Moreover, as held by the opinion in *Airboat Association of Florida, Inc. v. Florida Game and Fresh Water Fish Commission, supra,* the Game and Fresh Water Fish Commission is not an "administrative agency" for purposes of Chapter 120. The Court therein held that the Commission was created by the Constitution with the power to exercise regulatory authority over wild animal life and that the Legislature was constitutionally prohibited from adopting statutes in conflict with Commission rules. The Court in that case, in referring to its judicial review over final agency action pursuant to Section 120.68(1) and (2), *Florida Statutes* (1985), held that "agency action" under the above Statute included a Final Order concerning a rule adopted by an administrative agency (or, in the context of the instant case, concerning a proposed rule promulgated by an administrative agency). An administrative "agency," for purposes of Section 120.52, *Florida Statutes* (1985), however, according to the Court in this opinion does not include the Florida Game and Fresh Water Fish Commission because of its Constitutional genesis. Accordingly, under the holding in this case, rules proposed or adopted by the Commission under the holding

246

in this decision are not appealable to a District Court of Appeal because the Commission is not an "administrative agency" whose final action could trigger a Section 120.68, *Florida Statutes,* review to the Court. By the same token, if the Commission is not an administrative agency, its proposed rule promulgation is not subject to scrutiny by the tribunal charged with formulation of final agency action regarding proposed rules, the Division of Administrative Hearings and its Hearing Officers.

The Court went on to cite previously consistent holdings to the effect that the Commission is vested with exclusive legislative authority to adopt reasonable rules to regulate game or wild animal life and that the Legislature is constitutionally prohibited from adopting statutes in conflict with those rules. The Court stated:

> "Plainly, then, this Commission is not a statutorily created 'administrative agency as defined in the Administrative Procedure Act . . . and its acts are not subject to appellate review under that act.' (Cases omitted.) . . . Just as an act of the Florida Legislature is not directly appealable to a District Court of Appeal under Article V, Section 4(b)(2), Florida Constitution, and Section 120.68(1), (2), *Florida Statutes* (1985), so too; a rule adopted by the Florida Game and Fresh Water Fish Commission regulating wild animal and fish life in this State is not so appealable either, *as such a rule is tantamount to a legislative act.*" (Emphasis supplied.)

If rules proposed or adopted by the Game Commission regulating wild animal life are in the nature of legislative acts and are not rules adopted by an administrative agency within the meaning of Chapter 120, *Florida Statutes* (1985), the Court then has no jurisdiction to entertain appeals from Final Orders concerning those rules. Likewise it is obvious that, the Commission not being an administrative agency for purposes of Chapter 120, there can be no jurisdiction in the Division of Administrative Hearings to entertain challenges to its rules promulgated under its constitutional authority, as is the case at bar.

Accordingly, it is determined as a matter of law that proposed Rule 39-12.011 has been promulgated by the Commission under the aegis of its authority within Article IV, Section 9 of the Constitution of the State of Florida and is not subject to attack in a Section 120.54(4), *Florida Statutes,* proceeding. Therefore, the relief requested by the Petitioner is and the same is hereby DENIED and the petition DISMISSED.

DONE and ORDERED this 19th day of May, 1987, in Tallahassee, Florida.